Dollfus *v.* Frosch.

## Dollfus and others *vs.* Frosch.

The time of the accruing of the indebtedness laid in the money counts of a declaration is immaterial, provided it is of a day prior to the commencement of the suit; and it constitutes no objection that a note or bill offered in evidence under such counts did not become payable until after the time so laid.

Where, in a suit by the payee of a bill or note, the paper had been specially endorsed by the plaintiff to another, and there was no re-transfer by such other person, but the endorsement had been stricken out before the paper was offered in evidence; *held*, that the plaintiff was entitled to recover without explaining the endorsements or showing that they were made to create an agency for the purpose of collection.

Commercial paper payable in France on a certain day named will, in the absence of any proof respecting the law of that country, be held payable on the third day of grace.

Where the drawer of a bill of exchange had no funds in the hands of the drawee, but was on the contrary indebted to him at the maturity of the bill; *held*, that the drawer, in an action on the bill, could not object the want of a due presentment of it for payment, and of notice of its dishonor, though there had been prior transactions between the drawer and drawee, and the former had be-

Dollfus *v.* Frosch.

fore drawn on the latter, it appearing that when the bill in controversy matured the accounts between the parties were unsettled and in litigation.

A merchant, about to leave the city of New-York for Europe, executed a power of attorney to his clerk, empowering him, *generally to conduct in his place and stead, his commercial business, and to sign his name whenever requisite or expedient in the transaction and conduct of such business as to the attorney should seem meet in his good discretion;* HELD, that the principal was liable upon bills of exchange drawn in his name by the attorney upon parties who had no funds of the principal in their hands.

ASSUMPSIT, tried at the circuit court for the city and county of New-York in October, 1843, before KENT, late C. Judge. The suit was commenced by declaration containing the money counts in September, 1842. The plaintiffs offered in evidence four several bills of exchange, all dated New-York, December 23d, 1841, drawn (*per* procuration) by the defendant, by E. Bruè, addressed to Messrs. Johnston & Co. at Paris, France, and payable to the order of Messrs. Dollfus, Meig & Co., (the plaintiffs,) on the 10th day of July then next, for different sums, amounting in the whole to 18,427 francs. Three of the bills appeared to have been endorsed to Messrs. Raymond & Co., and the fourth to Mr. B. Renville; and the last appeared to have been several times afterwards transferred by full endorsements, the last endorsee being "The Bank of France." On the face of each of the bills the words "non-acceptable" were written between the lines. When the bills were produced at the trial a pen had been drawn over the endorsements apparently with a view to cancel the same, by which they were rendered nearly illegible.

Eugene Bruè was examined as a witness on behalf of the plaintiffs, and testified that he was formerly a clerk of the defendant, who was a merchant in the city of New-York; that he, the witness, was in France in December, 1841, and *there* drew the bills in question as the attorney of the defendant, by virtue of a power of attorney which was produced, and which the witness said was executed by the defendant when he (the defendant) was about going to Europe, and that the same was deposited as security in the Union Bank of New-York, where the defendant kept an account.

Dollfus *v.* Frosch.

The power of attorney was dated November 10th, 1840, and in terms authorized Bruè " to draw and endorse bills, drafts and notes, and draw checks on any bank or banks where funds of mine may be, and generally to conduct in my place and stead my commercial business, and to sign my name whenever requisite or expedient in the transaction and conduct of such business as to my said attorney shall seem meet in his good discretion." The defendant's counsel objected to the reading of the bills in evidence, 1. On the ground of an alleged variance, the declaration laying the indebtedness on the 10th day of July, 1842, and the bills becoming payable (allowing the days of grace) on the 13th of that month; 2. That the endorsements showed the title of the bills to be in the endorsees, and that a re-transfer was necessary to enable the plaintiffs to maintain a suit upon them. These objections were overruled and the bills given in evidence, and the defendant's counsel excepted.

The plaintiffs' counsel then gave in evidence the deposition of G. C. Johnston, taken on commission at Paris. He testified that he was the principal partner in the house of Johnston & Co., the drawees of the bills; that said bills being "non-acceptable" did not require to be presented for acceptance, but that they were presented to his house for payment on the 10th day of July, 1842, and that payment was refused, for the reason that neither the witness nor the house of Johnston & Co. had in their hands nor were furnished with funds by the drawer, and that the defendant was and still is indebted to the witness' house on an account current; that he did not write to or inform the defendant of the dishonor of the bills, it being, as the witness said, the duty of drawers of bills to furnish funds at the place of payment, and that the drawees were not required to give notice that they had refused payment. In his answer to a cross-interrogatory, the witness stated that the defendant had had transactions with the house of Johnston & Co. and had drawn on said house; that they had an account current together; and that at the maturity of the said drafts the said account was " unsettled and pending *en litigè.*"

The defendant insisted upon the same points upon which he

opposed the reading of the drafts in evidence, and also that the power of attorney did not authorize the drawing of these drafts, but only drafts upon parties who had funds of the defendant in their hands; that the bills should have been presented for payment on the 13th July, (the third day of grace,) and not on the 10th as was done, and that such presentment was not excused by the requisite proof of there being no funds of the drawer in the hands of the drawees; that upon the facts proved, notice of non-payment or of protest was essential to have been given. Upon these grounds the defendant moved for a nonsuit, which being denied, he then requested the judge to charge the affirmative of the several propositions presented.

The judge charged the jury, that in the absence of proof of the law of France respecting days of grace, the bills in question were to be considered payable on the 13th July, 1842, the third day of grace; that although the general rule of law was that notice of the dishonor of a bill was to be given to the drawer, yet, that the want of presentment for payment and the failure to give notice were excused when the drawer had no funds in the hands of the drawee; that if the jury believed from the evidence that the defendant was indebted to the drawees at the time of the maturity of the drafts, and had no effects in their hands from the time of the date of the drafts until they became mature, they ought to give their verdict for the plaintiffs, otherwise for the defendant, unless they should also believe that the drafts were drawn by the defendant under a reasonable expectation that they would be paid at maturity, or that they would then have effects in the hands of the drawees to meet them, in which latter case he advised them to find a verdict for the defendant; and the judge refused to charge otherwise on the propositions presented by the defendant's counsel. Exceptions were taken on behalf of the defendant. The jury found a verdict for the plaintiffs for the amount of the bills. The cause came before the court on a case.

*D. D. Field,* for the defendant, cited *Manhattan Co.* v. *Rey nolds,* (2 *Hill,* 140;) 15 *Lou. Rep.* 265; *Blackhan* v. *Doren*

Dollfus *v.* Frosch.

(2 *Campb.* 503;) *Hammond* v. *Dufrene*, (3 *id.* 145;) *Thack-ray* v. *Blackett*, (*id.* 163;) *Rossiter* v. *Rossiter*, (8 *Wend.* 494;) *Chautauque Co. Bank* v. *Davis*, (21 *Wend.* 584;) 5 *Bing.* 183.

*T. L. Wells*, for the plaintiffs, cited *Chitty on Bills, ed. of* 1842, *pp.* 369, 374, 435; *Commercial Code of France*, B. 1, *tit.* 8, *art.* 135; *Dugan* v. *The United States*, (3 *Wheat.* 172;) *Commercial Bank of Albany* v. *Hughes*, (17 *Wend.* 94;) *Fenwick* v. *Sears*, (1 *Cranch*, 263.)

*By the Court*, JEWETT, J. This suit was commenced on the 16th September, 1842. The indebtedness of the defendant is laid on the 10th day of July, 1842. The drafts offered in evidence, allowing days of grace, became payable on the 13th day of July of that year. On the trial the defendant's counsel objected to the drafts being given in evidence on the ground that, as the declaration alleged the defendant's indebtedness on the 10th day of July, and the drafts were not payable till the 13th day of July, they would not show an indebtedness until a period subsequent to the time alleged in the declaration. The objection was overruled. The time of the defendant's indebtedness alleged in the declaration is entirely immaterial, so that it is at a day prior to the time of the commencement of the suit.

The second point made by the counsel for the defendant was, that inasmuch as it appeared from the drafts that they contained special endorsements, without any re-transfer to the plaintiffs, they were bound to explain the endorsements, and show that they were made to agents for the purpose of collection.

The case shows that when the drafts were produced on the trial, these endorsements had been struck out by the drawing of a pen across them. I am of opinion that the objection is not well taken; and that the endorsements having been struck out, the law did not require the plaintiffs to show that such endorsements were made for the purpose of collection before they were entitled to stand in court *prima facie* as the owners of the drafts. In *The Manhattan Company* v. *Reynolds and another*, (2 *Hill*,

140,) the endorsement to "Kendrick or order," had not been struck out. *Prima facie* therefore, Kendrick might be deemed the owner until it was proved that the object of the endorsement was to enable him to collect the paper on account of the plaintiffs. *The Chautauque County Bank* v. *Davis and others*, (21 *Wend.* 584,) was a suit upon a bill of exchange drawn by Henry Davis and three other persons, on William Davis of New-York, paya-ble to the order of A. D. Patchin. The action was joint against the drawer and acceptor. The bill had been endorsed "Pay Richard Yates, Esq., Cashier, or order. A. D. Patchin, Cash-ier," and "Pay H. Baldwin, Cashier, or order. R. Yates, Cashier, per F. Leak." All the endorsements except the signa-ture "A. D. Patchin," were stricken out. The defendant moved for a nonsuit, on the ground that *title* to the bill was not shown in the plaintiffs. The plaintiffs then proved that the bill be-longed to them, that Patchin was their cashier, and that the en-dorsements to Yates and Baldwin were made solely for collection. The point raised in the case now under consideration did not arise in either of the cases referred to. In those cases, the point was, whether the plaintiffs *having proved* that the endorsements had been made for the purpose of collection and that the plain-tiffs in fact owned the notes, authorized them on the trial to strike out such endorsements. In this case the endorsements had been made by the plaintiffs, upon each of the drafts, and one had been subsequently endorsed by the endorsees. On the trial, when the drafts were produced in evidence, such endorse-ments had all been stricken out; when or by whom there was no evidence; nor was there, in fact, any evidence as to the pur-pose for which the endorsements had been made, or by what means the plaintiffs had become possessed of the drafts. It appears by a note under the first case above cited, that in *Hart et al.* v. *Windle*, (15 *Lou. R.* 265,) it was decided that a special en-dorsement by the plaintiff appearing on the note, *at the trial*, *prima facie* the right of action was in the endorser; and unless the former showed title by re-transfer, or that the endorser had no interest beyond a mere agency, the action would fail, and that possessior of the note by the plaintiff would not be sufficient to

Dollfus *v.* Frosch.

overcome the presumption arising from the endorsement. That it was not necessary for the plaintiffs, in order to be entitled to recover, to make such proof in this respect, as contended for by the defendant's counsel, I think is settled by the case of *Dugan et al., executors of Clark,* v. *The U. States,* (3 *Wheat. R.* 172.) That was a suit upon a bill payable to the order of J. Clark, which by several intermediate endorsements, came to T. T. Tucker, treasurer of the United States, or order, who purchased it for the government with government funds. He afterwards endorsed it to Willinks & Van Staphorst specially, by whom the bill was presented for acceptance and acceptance refused. When produced, the last endorsement was still on the bill, and the objection was taken that the plaintiff could not recover without showing a re-endorsement; but the court held that the evidence was sufficient to entitle the plaintiff to recover upon the bill. Mr. Justice Livingston, in delivering the opinion of the court, says: "After an examination of the cases on this subject (which cannot all of them be reconciled) the court is of opinion, that if any person who endorses a bill of exchange to another, whether for value or for the purpose of collection, shall come to the possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the *bona fide* holder and proprietor of such bill, and shall be entitled to recover notwithstanding there may be on it one or more endorsements in full, subsequent to the one to him, without producing any receipt or endorsement back from either of such endorsees, whose names he may strike from the bill or not, as he may think proper."

The drafts in suit were in their terms *non-acceptable,* and therefore it was not necessary, in any event, to present them to the drawees for any other purpose than for payment; they were presented, on the 10th day of July, 1842 for that purpose, and payment refused. It is insisted on the one side that such presentment was a *nullity,* inasmuch as the bills did not mature until the 13th of July, the third day of grace. On the other side it is answered, that the drafts having been drawn and made payable in France, must be governed by the law of France in their construction; and it is asserted that in France no days of grace are

allowed, but that the drafts matured on the day for payment set forth by their terms.    That the law of France must govern in the construction of the contract is well settled.  (*Sherill* v. *Hopkins*, 1 *Cowen*, 103.)    But this court cannot take judicial notice that such is the law in France, and it lay with the party claiming the benefit of such law to prove its existence.    This has not been done.    In such case we must decide this point according to the law as it is here.  (*Cowen & Hill's Notes to Phil. Ev.* 1136, 7, 8, *and the cases there cited; Thompson* v. *Ketcham,* 8 *John.* 189.)    It follows, that the presentment of the drafts for payment on the 10th of July, 1842, was premature, and not effectual for any purpose.    It is however insisted, by the counsel for the plaintiffs, that no presentment for payment or notice of non-payment was necessary, inasmuch as the defendant, the drawer, had no funds in the hands of the drawees with which to pay the drafts.    Johnston, the principal in the firm of Johnston & Co. the drawers, was examined as a witness for the plaintiffs, under a commission, and he testified that neither he or the house of Johnston & Co. had any funds belonging to the defendant with which to pay said drafts, and that the defendant was still the debtor of the house ; that the defendant or Bruè, or any other person in the behalf of the defendant, had not remitted any funds to the witness or his house, to pay said drafts when they should become due and payment thereof be demanded.  The witness also testified, that he had not written to the defendant to inform him that the drawees had refused to pay said drafts, and that the rule was that the subscriber of drafts or bills of exchange must provide the necessary funds at the designated place of payment without concerning in the least the person or house designated to pay said bills; nor did it oblige the said person or house on whom the same are made payable, to inform the subscriber of said bills of the default of payment.

The contract of the drawer in this case was, that these drafts should be paid by the drawees on presentment, at their maturity ; and if not, then he would pay on due notice of non-payment. Hence a presentment for payment and due notice to the drawer on payment being refused, were *conditions precedent ;* and a

Dollfus *v.* Frosch.

want of either would be a sufficient answer to this action, unless it is proved that such presentment and notice were rendered unnecessary by the acts of the defendant. It is a rule well established, it is believed, that neither presentment for payment nor notice of non-payment is necessary, provided the drawees never had any effects of the drawer in their hands, or if the drawer had withdrawn them before the day of payment, without giving notice of the bills. (*Commercial Bank of Albany* v. *Hughes*, 17 *Wend.* 94; *Walwyn et al.* v. *St. Quintin*, 1 *Bos. & Pul.* 652; *Story on Bills of Ex.* 376, § 327.) *Valk* v. *Simmons*, (4 *Mason's C. C. U. S.* 113,) was *assumpsit* on a bill of exchange by the holder against the drawer *after* acceptance. The defence was want of due notice of non-payment by the acceptor. It appeared in evidence that the drawer had drawn out all the funds in the hands of Mott, the acceptor, *before* the acceptance, and had not placed any funds in Mott's hands with which to pay the bill. Judge Story decided that " no notice was necessary when the acceptor had not in fact, or in the expectancy of the drawer, any funds in his hands at the time of payment, nor had entered into any arrangement with the drawer at all events to pay the bill." And again, "He was then, to say the least of it, in the predicament of a party drawing without funds, and having no right to expect his bill to be paid."

It is objected that Bruè had no authority under the power of attorney to draw the drafts, if there were no funds or effects in the hands of the drawees at the maturity of the drafts. I am of opinion that the objection is not well founded. The terms of the power of attorney empowered the agent "generally to conduct in my place and stead my commercial business, and to sign my name whenever requisite or expedient in the transaction and conduct of such business as to my said attorney shall seem meet in his good discretion." This was a sufficient authority to draw the bills in question. A new trial should be denied.

New trial denied