## THROOP *a*. HATCH.

*Supreme Court, First District; Special Term, May,* 1856.

PLEADING.—FOREIGN LAWS.—PRESUMPTION.—TRUSTS.

In a complaint upon a cause of action dependent upon the laws of other States, a *general* averment is insufficient. The laws relied on must be averred and proved.

In the absence of appropriate averments to show the laws of a sister State, the presumption is that the common law as it existed at the time of the separation of this country from England, prevails in such State.

There is no presumption that the statutes of New York have been enacted in other States.

Of the doctrine of the common law respecting trusts of real property.

Appeal from a judgment at special term, overruling a demurrer to a complaint.

The complaint in this action was filed by M. H. Throop against Israel Hatch. It alleged an oral agreement made in 1833, between the defendant and certain persons whose rights under the agreement had been assigned to the plaintiff, which was to the effect that the defendant should proceed to the then territory of Michigan, and purchase land on the joint account of the parties to that agreement, that defendant should hold such lands for the joint benefit of all parties, should make sales thereof from time to time, and account for the proceeds to the parties to the agreement. It also alleged that pursuant to this oral agreement the defendant executed a writing claimed by the plaintiff to be a declaration of this trust. The complaint also contained an averment in general words, that by the laws of the territory of Michigan, in 1835, the trust set forth was a valid trust, or power in trust, which courts of equity would enforce, and that it so continued under the laws of the States of Ohio and Michigan, in which the lands now were. The plaintiff prayed an accounting and payment for the balance.

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action ;—setting out also the particular objections to the complaint, which, so far as they were important appear in the opinion.

*G. B. Hibbard,* for appellant.

*M. H. Throop,* respondent, in person.

W. F. ALLEN, J.—If the plaintiff is driven to the statute laws of the States of Ohio and Michigan, to maintain this action, and bound to show that by the statutes of those States the trusts which he seeks to enforce are valid, he should have set out, at least substantially, the statutes upon which he relies. The laws themselves are to be averred and proved in the same manner as other facts, and their existence is to be proved by copies of the statutes properly exemplified, as other documents

are. The averment that the trusts are, by the laws of the States in which the lands are situated, valid and subsisting trusts, is therefore nothing more than an averment of the conclusion of the pleader based, 1st upon his knowledge of the existence of certain statutes, and 2d, upon his construction of those statutes.

The statutes being the fact to be established, should be averred and proved, and the court can then pronounce the appropriate judgment. It would certainly be bad pleading to aver that by a certain judgment recovered in the courts of this or any other State, or by reason of a certain bond executed by the defendant, he was indebted to the plaintiff in a given sum, or owed any other duty; so, the allegation that by the laws of the States named, the trust described in the complaint is a valid trust or power in trust, which courts of equity will enforce, without setting out the statutes at least in substance, is bad. Unless therefore the complaint can be sustained, and the trusts upheld without the aid of the local laws of Michigan and Ohio, the judgment of the justice at special term must be reversed.

The questions then will be:—1st. In the absence of any proper averment of the statutes of the States of Michigan and Ohio affecting the rights of the parties and the subject matter of the litigation, what laws are presumed to prevail in those States; the common law, or the statutes of this State when they differ from the common law? 2d. Are the trusts valid by that law which shall be found to prevail upon this presumption?

1. Do the statutes of this State, or does the common law, as it existed in the absence of any legislation, or at the time of the separation of this country from England, prevail in other States of the Union by presumption of law?

There is a want of precision in the language of some of the cases which would lead us to suppose, upon a cursory examination, that our courts have intended to decide that in the absence of any evidence of what the laws of other States are, it will be presumed that they are the same as the laws of this State, without distinguishing whether the common law or a statute of the State should give the rule. It will be conceded that our statutes have no extra territorial force, and as they

cannot have, as the statutes of this State, any binding force out of the State, the presumption must of necessity be that the other States of the Union did at the same time that we acted upon the subject make the same changes in the law which we did, if we come to the conclusion that the statute laws of all the States are presumed to be the same as our own. This would be a presumption violent in the extreme as a presumption of fact, and should not be entertained except upon the clearest authority. It is well established that the common law is presumed to have originally existed in all the States in the Union, except, perhaps, in those which had been, before becoming members of the Union, subject to another code and system of laws, and it is a well established presumption of law that things once proved to have existed in a particular condition, continue in that condition until the contrary is established by evidence either direct or presumptive. (*Best on Presumptive Ev.*, 186.) Each State having the sole power to legislate for itself and change the common law therein by act of the Legislature, it would seem to follow that until there were some proof that the common law had by legislation ceased to be the law of the land it would be presumed to be in force. I can see no foundation for the presumption that because one State has seen fit to dispense with the rules of common law and provide others for the government of its citizens upon a given subject, the Legislature of every other State has been like minded. I speak now of those matters which are known to, and in the absence of an overruling statute are governed by the common law. There are matters in relation to which the common law does not speak, which are regulated solely by statute, and in regard to some of these matters it is not impossible that our statutes may be presumed to be the same as those of the other States, or rather, the laws of other States, in the absence of evidence, presumed to be the same as those of our own.

In Legg *v.* Legg, (8 *Mass.*, 99,) the law of Vermont was presumed to be the same as that in Massachusetts upon a question as to which the common law prevailed in the latter State. Thompson *v.* Ketcham, (8 *J. R.*, 190), decided that as the disabilities of infancy depended upon municipal regulations, he

who sought to avail himself of the plea of infancy to a contract made in a foreign country, must aver and prove the laws of that country, and that nothing could be presumed. This was not a case involving the laws of a sister State, but of a foreign country. This case is recognized as law in Sherrill *v.* Hopkins, (1 *Cow.*, 103,) but what is said by the learned judge as to the presumption of the law in Massachusetts is not very clear, and is entirely *obiter*, as the case passed off on another point which rendered that question immaterial. In Holmes *v.* Broughton, (10 *Wend.*, 75), a very reasonable rule was held, to wit, that this court cannot take judicial cognizance of any of the laws of our sister States, at variance with the common law, but that upon a common law question the legal presumption is that the common law of a sister State is similar to that of our own; which doctrine, if followed out, clearly negatives the idea of a presumption that other States have dealt with the common law upon any question as we may have done. The same was held substantially in Starr *v.* Peck, (1 *Hill*, 270.) Cowen, J., after stating a legal proposition applicable to the case, says, "Such is the common law, which we must presume was the law of Connecticut at the time, in the absence of proof to the contrary."

In Leavenworth *v.* Brockway, (2 *Hill*, 201), the question was as to the rate of interest in Ohio, which is entirely regulated by statute; and the court, in the absence of proof, presumed the rate to be the same as with us; and the case is sustained by the authorities cited in the reporter's note to the case, which appear to recognize, without naming it, a distinction between the laws of sister States and foreign countries in this particular; that as to the former, on matters of merely statutory regulations, the courts will entertain a presumption that they are similar to our own; while as to the foreign countries, as in Thompson *v.* Ketcham, no such presumption will prevail. The commercial law, as it prevails in this country, was presumed to exist in France, as to commercial paper, in Dolfus *v.* Fasch, (1 *Denio*, 367). Abell *v.* Douglas, (4 *Denio*, 305), is very much in point; and it was there held, that contracts and conveyances between citizens of this State respecting lands in another State are governed by the laws of such other State,.

and that in the absence of proof to the contrary, the common law of England, respecting the formalities required to transfer title to land, is presumed to prevail in the other States of the Union. The principle of that case is entirely decisive of this point in the present case, and determines that the presumption is that the common law prevails in the States of Ohio and Michigan in respect to the subject matter of this litigation, and must be resorted to, to determine the rights of the parties, in the absence of a proper averment, that a different rule has been established, and that there is no presumption that those States have legislated at all upon the subject involved in this action. I have met with no case in conflict with this view, but all, I think, are reconcilable with it. (See the matter of Roberts' Will, 8 *Paige*, 446; Holford *v.* Nichols, 2 *Paige*, 220; Robinson *v.* Dauchy, 3 *Barb.*, 20; Monroe *v.* Douglass, 1 *Seld.*, 447; Thatcher *v.* Morris, 1 *Kern.*, 137; *C. & H. Notes*, 1 *Ed.*, *page* 1138.) The common law is presumed, upon the pleadings in this case, to be the law of the States of Ohio and Michigan. This brings us to the consideration of the next proposition.

2d. By the common law are the trusts sought to be established, valid and capable of being enforced in equity?

I do not deem it important to inquire, in the views I take of the instrument set out in the complaint, and which is relied upon as a declaration of trust, whether the statute of 29 Charles 2d, requiring all trusts to be declared or evidenced by some writing, must be taken as forming a part of the law of the several States of the Union, without a re-enactment by the legislatures thereof. My impression is that statutory restrictions upon the conveyance of property, or any interest therein, and regulating the mode of acquiring title to, or interest in, such property, or prescribing the forms of contract and the manner of solemnizing them, in order to their validity, in force as English statutes at the time of our separation from that government, were not adopted by the States, except as expressly declared by the legislature; and that in the absence of any express legislation on the subject, title to property may be transferred and interest therein acquired, and contracts in regard thereto made, in any form to which the parties may assent, and which would have been upheld at common law. But be this as it

may, the declaration of the trust alleged by the plaintiff is sufficient as a declaration under the English statute of Charles 2d; and if sufficient under that statute, it is sufficient as a parol declaration, valid at common law. A trust is defined to be " a confidence reposed in some other, not issuing out of the land, but as a thing collateral annexed in privity to the estate of the land and to the person, touching the land for which *cestui que use* has no remedy but by subpœna in Chancery." (*Lewin on Trusts*, 15.) Under the statute of Charles 2d, it is not necessary that the trust be created by deed or other written instrument. It is sufficient, if its existence be manifested or declared by some writing signed by the trustee. (*Lewin on Trusts*, 30; *Story Eq. Jur.* § 972.) It is not essential that the writing by which the trust is manifested and proven, should be in any particular form. It may be in any language clearly expressive of a trust. There are three requisites to a valid declaration of trust, to-wit: sufficient words, a definite subject and a certain object. (Currys *v.* Coleman, 9 *Vesey*, 319; *Story Eq. Jur.*, § 964). The objection taken to the instrument relied upon, is, that it does not show the terms of the alleged trust. If by this it is intended that it does not give specific directions in regard to the execution of the trust and the disposition of the trust property, it suffices to say that this is not required either at common law or by the statute of Charles 2d. It is sufficient that the trust be declared. This is a simple trust corresponding with an ancient use. The property is vested in one person, upon trust for another, and the nature of the trust is left to the construction of law. (*Lewin on Trusts*, 21.) A special trust is not alleged by the plaintiff. Before the statute of fraud, a trust might be raised by parol, and under the statute of Charles no other formality is required, than a simple note in writing, but under seal. (*Ib.*, 26.) Whether the plaintiff seeks to establish a trust valid by parol at common law, or, as declared in writing under the statute of Charles 2d, the trust alleged is valid. The declaration of trust alleged is not executory, to be supported by some consideration, before the courts will enforce it; but it is already created and vested, and evidenced by the written instrument, signed by the defendant. (*Story Eq. Jur.*, 973.) This is not the case

of a resulting or implied trust, but the trust is express, created by the direct operative acts of the parties, and it is sufficient that the intention to create it can be fairly collected upon the face of the instrument, by the terms used, and the trust can be drawn, as it were, *ex visceribus verborum*. (*Story Eq. Jur.*, 980; Bellaris *v.* Crampton, 2 *Vern.*, 294). The cases cited by the defendant, relating to resulting trusts and executory agreements, to create a trust in favor of volunteers, I do not refer to particularly, because I do not deem them applicable. (Such are Barbour *v.* Townsend, 1 *M. & R.*, 506; Jackson *v.* Bateman, 2 *W. R.*, 570; Botsford *v.* Burn, 2 *J. C. R.*, 405; Ellison *v.* Ellison, 6 *Vesey*, 656; 2 *White's Leading Cases in Equity*, 167, *and Note;* Brodine *v.* Edwards, 10 *Paige*, 504.) Sterne *v.* Sterne, (5 *J. C. R.*, 1), is not in conflict with the views I have taken of this case. If, however, a consideration were necessary to uphold a trust actually established and declared, it would be found in the case before us, in the preliminary agreement alleged in the complaint, and the performance thereof by the parties. An abundant consideration is shown for the declaration of trust by the defendant, in favor of the *cestui que trusts*, one of whom is represented by the plaintiff.

The judgment at special term must be affirmed; but with leave to answer to the usual terms.