[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 136 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 137 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 138 
The plaintiff seeks the relief demanded in this case under the law of this State, passed about the time of the recovery of his judgment against "The Boston and New York Coal Company." (Laws of 1845, ch. 234, p. 256.) The act was designed to facilitate the collection by domestic creditors of debts against foreign corporations, by giving a remedy against their credits and assets within the State. It provides that upon the return of an execution against such corporation, unsatisfied in whole or in part, the creditor may commence a suit against any debtor to the said corporation, against the subscribers to its capital stock, shareholders or stockholders, or any or all of them, and may recover in such suit or suits any sums to the amount due the plaintiff, "which such defendant or defendants could be liable to pay in any event in the state or government where such corporation is located." A plaintiff, being a judgment and execution creditor of the corporation, and bringing himself within the terms of the act, must, in order to a recovery under it, establish a present debt and liability to the corporation from the person sought to be charged, if, as a stockholder, according to the lex domicilii of the corporation, and if under any other contract, under the lex loci contractus. The law does not assume to declare or create a liability, but undertakes to deal with and dispose of liabilities existing already. It could not create an obligation or vary the terms and conditions of a liability, or of the contract or relation out of which a liability is sought to be established; and when it declares that the parties may be charged with any sum which they "could be liable to pay in any event in the state and government where *Page 139 
such corporation is located," it does not mean to charge the stockholders or other creditors in any other form or upon any other conditions, or to any greater extent than he would be charged by the lex loci. If the liability to the foreign corporation depended, by the terms of the contract, upon the performance of a condition precedent, the legislature of this State could not dispense with or avoid such condition, but the creditor seeking to enforce the liability must show its performance, or that its performance has been waived or prevented by the party in interest. Assuming all that can be claimed by the plaintiff in regard to the personal liability of the stockholders to pay to the corporation the nominal or par value, or amount of their respective shares, the liability of Mr. Sturgess in this action is not shown. The liability is that resulting from the implied promise to take and pay for the stock assigned — implied as against the original subscriber from his subscription, or as against the subsequent holder by his accepting the certificate, thereby succeeding to the liabilities as well as the rights of the original subscriber. We are at liberty to say that neither by the general statutes of Maryland nor the special charter of "The Boston and New York Coal Company" are subscribers to the shares or subsequent stockholders made personally liable to pay for their stock, or that any liability rests upon them, except the common law liability growing out of their contracts with and relation to the corporation. We have so much of the charter as the plaintiff has seen fit to set out in his complaint, and in it there is nothing to charge the stockholders, and the charter itself was not put in evidence, nor any general law of the State of Maryland upon any subject. The common law, therefore, must determine the liability of the parties. (Holmes v. Boughton,
10 Wend., 75; Thorp v. Hatch, 3 Abb. Pr., 23; 1 Kent Com., 472.) The most that could be implied from a subscription to the capital stock, or an acceptance of a certificate of stock, would be a promise to pay upon request of the promisee (the company), or upon such terms and conditions and at such times as the company, by its by-laws, had prescribed. The terms of the *Page 140 
subscription, if any subscription was in fact made, are not before us, but we have the by-laws, by which it is expressly declared that the stock shall only be subject to call by the directors, and that no call shall at any time be made for payment upon the stock except upon the vote and by the direction of at least five of the directors. Any one becoming a stockholder, as did the defendant, Sturgess, after the enactment of this law, and promising to pay the balance unpaid upon his stock, was entitled to the benefit of this provision. It entered into and made a part of the contract with the company and constituted a material and important modification and condition of the promise. In an action by the company, it would be a good plea in law that no call had been made by the affirmative vote of five directors. The money was only payable upon a demand and notice in a prescribed period by direction of the requisite number of directors. There is no claim that this call and demand have been made, or that the defendant has waived the performance of this condition precedent. There is no allegation that the company has gone into liquidation, and the directors have no power to act, even if such an allegation could aid the plaintiff. The importance of this condition to every stockholder is obvious. It secures a ratable call upon all the stockholders and equalizes the burdens of the company. It also prevents a call except when the exigencies of the corporation may require it, and if a stockholder casually, in or by chance residing in another State, may be compelled to pay upon any other condition, or without condition, he loses the benefit of this essential provision in his contract, and is made to bear an undue proportion of the burdens of the association.
Upon the allegations and proof as made before us, and without the call from the directors, the defendant could not in any event be made liable to pay to the corporation in Maryland or elsewhere, and if not to the corporation there, not to any one standing in the place of the corporation, either by assignment, succession or act and operation of law; for there is no debt or duty owing to the corporation which can inure to the benefit of *Page 141 
the creditors of the corporation or others. (Savage v.Medbury, 19 N.Y., 32.)
But a firmer and better ground upon which to rest the decision of the case, because less technical, is that there was and is no personal liability on the part of Mr. Sturgiss to pay the thirty-five dollars remaining unpaid upon his stock. I yield to the authority as well as the principles and reasoning of the cases, which hold that in a certain class of corporations, the franchises of which are of a public character, and where the capital may be supposed to have been fixed with a view to the necessities of the corporation, and to enable it to fulfill its duty to the public and accomplish its proposed end, a subscribing for or agreement to take stock may imply a promise to pay for it, and that each successive taker of the stock takes it cum onere
and becomes personally bound for its payment. The promise is implied from the circumstances of the case, the public interest and the terms of the subscription. The cases are governed by the ordinary rules which regulate other transactions, and the law does not, in raising implied promises, arbitrarily make provisions or contracts for parties, but spells out the intent and declares what the parties really undertake — what the actual contract was. In other words, an implied promise is distinguished from an express promise, rather by the mode of proving it than by any intrinsic difference between them. The one is proved by direct evidence, and the other by circumstances and indirectly. Without a promise, proved in one way or the other, a party cannot be charged in assumpsit. If the circumstances negative all presumption of a promise, there is no rule of law applicable to any class of cases which compels courts to disregard the circumstances and adjudge a promise to have been made against the evidence. In the class of cases referred to (actions upon unpaid subscriptions for stock and against assignees of stock not fully paid for), courts have had respect to the terms of the contract and certificate and the circumstances of the case; leaving it for other tribunals, in applying the same principles, to observe and give effect to different circumstances as they *Page 142 
may arise, and declare what in each case, is the contract or agreement of the parties. The Company was here incorporated not to accomplish a great public object, but for the immediate profit and advantage of its projectors, and to enable them to dispose of their land and mines, and with a view to a development of their resources by those who should associate together in the corporation. Hence the land owned by the corporators named in the charter is made by the law to constitute a part of the capital stock, and it was not deemed necessary for any public purpose, or for the protection of the corporators that any statutory provision should be made for the payment of the capital stock beyond the twenty dollars required to be paid at the time of subscribing.
It was reasonably supposed that the proprietors of the land, who were the sole corporators and managers, with full corporate powers, until the election of directors, as well as the commissioners for receiving subscriptions to the stock, could and would make adequate provision in the sale of shares in the adventure for the protection of their own interests as vendors, and that the corporators — the vendees — would consult their own interest in making joint advances for the improvement of the property purchased. The whole scheme was but a purchase, by those who became associated in the corporation with its original projectors, of the land of those projectors, and an arrangement for the working of the mines and vending of their produce, under the direction of a board of managers, and under such rules and regulations as the shareholders should from time to time prescribe. The lands were sold upon terms satisfactory to those interested; and, after the payment of half a million of dollars, they were content to rely for security for the payment of the residue upon the property transferred, without recourse to the individual responsibility of the purchasers; and it was deemed proper that the interests of the shareholders should regulate the future calls upon the stockholders for funds to enable the corporation to take measures for the carrying out the contemplated work of improving the property, by which alone they could hope for a return from *Page 143 
the moneys already invested. If they should proceed with the work and make the venture profitable, the originators of the scheme would receive the balance due them; and if they should not, the lands would revert, and they would have their lands together with the moneys received upon their purchase. The act, therefore, well provides for annual meetings of the stockholders, as well as special meetings upon the call of stockholders or of the directors, and invests the stockholders with large powers in the dismissal of officers and in the making of by-laws and resolutions which shall be binding upon the directors and managers; and the by-laws adopted at the first organization of the corporation made the vote of five-sixths of the directors necessary to a call for payment upon the shares.
Again, no formal subscription was made for the stock: at least, none is set forth in the case, or appears to have been made. Those who became stockholders became such, not by subscribing to a paper by which they agreed "to take," or "to take and pay for," a given number of shares, upon which a promise to pay could be directly predicated, and upon which, in the cases upon this subject, a liability to pay has been declared; but, so far as appears, they became stockholders by paying the amount fixed by law, or agreed upon with the corporators, and taking certificates for stock, with a clause therein, stating the further payments to which the stock might be subjected by the order of the directors; thus making the title of the purchaser or stockholder a conditional title under the by-laws, depending upon his payment of the future calls, but leaving such payment optional with him. This was clearly the terms, as well as the legal effect, of the contract with the defendant Sturgess. It was not an agreement by Mr. S. to pay forty-six dollars, or thirty-nine dollars, for the stock — eleven dollars or four dollars in hand, and thirty-five dollars on call or at a future time; but it was a purchase of the stock at eleven and five dollars, subject to a lien for thirty-five dollars additional. The very terms of the sale negative all inference of a promise by the purchaser to pay the additional sum. It is plainly inferable that this was the substance of the transaction *Page 144 
with the original or first stockholders. The only paper subscribed by any shareholder is an acceptance of a proposition for the purchase of the lands mentioned; and several gentlemen accept the proposition to the amounts set opposite their respective names, amounting in the aggregate to $150,000; and that agreement is consummated by the transfer of title and payment of the purchase price as agreed upon, so that the proposition and acceptance are functus officio; and if, by reason of that agreement and the payment of the sum agreed upon, the subscribers became entitled to and received certificates of stock, the certificates furnish the only evidence of the terms upon which they accepted and held the stock. There is no allusion to the capital stock of the corporation, or its shares, in the instrument itself. It was a paper got up for a special purpose, and has accomplished that purpose; and its operation and effect cannot be extended, to the prejudice of the subscribers and their successors in the corporation. In The Hartford and New HavenRailroad Company v. Kennedy (12 Conn., 499), and Same v.Brewer (id., 530), there was a formal subscription, which the court properly construed, under the circumstances and for the reasons finally stated by HUNTINGTON, J., but which have no application to this case, as a promise to take and pay for the stock, "on the terms, conditions and limitations mentioned in the charter." The charter expressly authorized the directors to require payment of the sums subscribed at such times as they might deem fit; and it was in connection with this clause of the charter, directly referred to by the subscription, that the contract was read; and this, in connection with the reasons connected with public interests, was controlling in the decision. Similar reasons were influential in Ward v. The GriswoldvilleManufacturing Company (16 Conn., 593). Mann v. Cooke
(20 id., 177), was by the receiver of the Canajoharie and Catskill Railroad Company, a corporation of this State, upon a subscription which was special in its terms; and one question was upon the legality of that part, under which the defendant sought exemption from liability; and another important question was as to the right of the receiver to sue, and the *Page 145 
case turned partially upon the construction and effect of a statute of this State which has not, so far as we know, been enacted in Maryland. It makes the stockholders directly liable to creditors for any sum remaining unpaid upon their stock. (1 R.S., p. 600, § 5.) The case was well decided, but does not directly bear upon the questions before us. Sagory v. Dubois (3 Sandf. Ch., 466), was not entirely unlike the last case, and was by a receiver of an insolvent corporation. The same principles were applied, and the defendant was held liable upon a subscription, by the terms of which he "subscribed for" and "agreed to take" the stock. An agreement to take or buy necessarily implies an agreement to pay, unless there is something showing a different intention or agreement. The cases touching the rights and remedy of creditors are not important, unless a liability of the defendant is first established. Mann v. Currie (2 Barb., 294), makes the liability of the stockholder to rest upon contract, and not upon the relation, and is like the case ofMann v. Cooke (supra), and grew out of the insolvency of the same Company. In Northern Railroad Company v. Miller (10 Barb., 260), there was a promise in the subscription to take and pay for the shares; and The Buffalo and New York City RailroadCompany v. Dudley (14 N.Y., 336), simply decides that an agreement to take a certain number of shares creates an implied, if not an express, promise to pay for them. Another question was the important one in the case. The liability is everywhere made to depend upon contract. (Ang. Ames on Corp., § 517, et seq.;Huddersfield Canal Company v. Buckley, 7 T.R., 36.) This is expressly decided in The Andover and Medford TurnpikeCorporation v. Gould (6 Mass., 40), in which it was held that where the members of a turnpike corporation have expressly agreed to pay the assessments that may be made by the corporation, an action lies for the corporation to recover the assessments; but if there be no such agreement, the sole remedy for the corporation is by the sale of the shares of the delinquent members. (See, also, The New Bedford and Bridgewater TurnpikeCorporation v. Adams, 8 Mass., 138; The Worcester TurnpikeCorporation v. *Page 146 Willard, 5 id., 80; The Franklin Glove Company v. White,
14 id., 286; Gray v. Coffin, 9 Cush., 199.) There was no express contract by the defendant Sturgess, or by any one to whose rights and liabilities he has succeeded, to take and pay for the stock; and no implied contract or promise is made out by the evidence. On the contrary, every circumstance shows that no such promise was made, or intended to be made, or understood to have been made; and it follows, that there is no personal liability which can be enforced by the corporation, or in behalf of and for the benefit of a creditor of the corporation.
The judgment must be affirmed, with costs.
DENIO, Ch. J., and SELDEN, J., expressed no opinion; all the other judges concurring,
Judgment affirmed.