## BRADBURY HALL *v.* MICHAEL COSTELLO.

The general rule is that contracts, in respect to their construction and force, are to be governed by the law of the country or State in which they are to be performed.

Whatever constitutes a good defence where the contract is made or is to be executed, is equally good in every other place where the question is litigated.

The plaintiff, having advanced his money to the defendant, both in this State and in Canada, for enforcing a contract for the enlistment of men in Canada, the direct tendency of which was to violate a public law of Canada, can recover no part of it back, for where both parties are equally criminal, the position of the defendant is to be preferred.

In proof of the laws of a foreign country, the testimony of any person, whether a professional lawyer or not, who appears to the court to be well informed on the point, is competent.

WRIT dated November, 1864. Assumpsit for $90, money had and received, &c.

Under plaintiff's specification, he claimed that in the fall of the year A. D. 1864, and prior to the date of his writ, he loaned to the defendant, at Whitefield, the sum of                                    $40 00
And afterwards, during the same fall, at Montreal,        30 00
                                                                                ———— $70 00

The trial of the case came on at this term before the jury, and, by consent of the parties, it was withdrawn from the jury for the purpose of obtaining the opinion of the whole court as to the law applicable to the following statement of facts: The parties were both residents in Whitefield in 1864. The evidence tended to show that, in September of that year, plaintiff called on defendant and requested him to go to Montreal in Canada, for the purpose of procuring men, or enlisting men to serve as soldiers in the armies of the United States; that, pursuant to this request, an agreement was made that the defendant, who had friends in Montreal, and had twice before been there to obtain men for a similar service, should immediately go there and obtain some men for the aforesaid purpose, and if anything should be made out of the enter-

prise, the parties were to divide in some satisfactory way the proceeds. The plaintiff testified that each party was to pay his own expenses ; the defendant contending that plaintiff was to pay him his expenses and the expenses of any bonus to any men he might get.   The defendant being short in funds, received towards his expenses of his expedition, at White-field, from the plaintiff, $40.   Defendant then repairs to Montreal, and engages the services of four or five men. . After the termination of three days, plaintiff arrives at the same place, and the defendant having expended the money before received in his own expenses, and in advances for the support of his own men, then and there applied to plaintiff and received the other sum of $30, which was to be appropriated in pursuance of the original agreement of the parties.   The evidence tended to show that all of the aforesaid $70 was expended by the defendant in his expenses and advancements as aforesaid, excepting the sum of six dollars, which defendant admitted he had laid out at Montreal in the purchase of two shawls, which were appropriated to his own private use. These six dollars were admitted to be part of the money last advanced by plaintiff to defendant at Montreal.   It was in evidence that both parties knew that it was in violation of the law of Canada to enlist men there, or procure men there to be enlisted here into the service of the United States.   In consequence of a friendly and timely warning that they were in danger of being seized and punished for violating the law on this subject, the parties were induced to abandon their purpose, and returned home without bringing out any men.   Plaintiff now insisted that it was no part of the original agreement that he was to pay defendant's expenses, but that each was to bear his own private expenses.   The defendant denied this position, alleging that plaintiff agreed to pay his expenses at all events, and also to pay him well for his trouble, and would leave it to plaintiff's discretion to pay him as much more as he thought proper.

To show what the law of Canada was, prohibiting the enlistment of men, the defendant, against the objection of plaintiff, was permitted to call Messrs. Ray and Fletcher, attorneys at this bar.   Mr. Fletcher testified in substance, that Mr. Woodward of Jefferson, was arrested as a substitute broker, for unlawfully endeavoring to enlist men, &c., in Canada, in 1864, and was committed to the gaol in Sherbrooke for that reason ; that he was admitted to bail in the sum of $1000 or more ; that he was applied to by Woodward to aid him as his counsel ; that he repaired to Sherbrooke and there consulted with J. J. Sanborn, Esq., who was one of the Queen's counsel in Canada, and who was of the firm of Sanborn & Brooks ; that said Brooks was also the prosecuting attorney in that district in behalf of government ; that he was in the office of Messrs. Sanborn & Brooks, and inquired as to the law applicable to these cases ; that it was shown to him, and was the same embraced in what purported to be embodied in the proclamation of the Queen, dated May 13, 1861, the statute being there fully set out and as having been made and passed in the 59th year of the reign of George III., entitled an "Act to prevent the enlisting, or engagement of his Majesty's subjects to serve in a foreign service, and the fitting out or

equipping in his Majesty's dominions, vessels for warlike purposes, without his Majesty's license;" that one of the said proclamations embracing the act of Parliament aforesaid, was then and there given to him by Sanborn & Brooks, being the same paper now produced in court; that he was guided by the law as set forth herein, in the Woodward case; that he attempted to procure the reduction of the amount of the bail of said Woodward, before Judge Short, of that district, and that he had information also from Judge Short, that the act embraced in said proclamation was the law regulating this class of cases, and that he acted under it before him in reference to the bail of said Woodward, and in his efforts to procure his discharge.

Mr. Ray testified that he acted as counsel in the extradition case of Crawford, in 1864–5, and that he had occasion to inquire into the law regulating these cases, in consultation with Messrs. Sanborn & Brooks, at Sherbrooke; and that the aforesaid statute, as embraced in one of the Queen's proclamations aforesaid, was designated by Sanborn & Brooks, or one of them, as being the law then in force, prohibiting the enlistment of men there, to serve here; that the attention of Mr. Ray was particularly directed to that part of the law which is marked or surrounded by black lines, viz: ["Or if any person whatever within the United Kingdom of Great Britain and Ireland, or in any part of his Majesty's dominions elsewhere, or in any country, colony, settlement, island, or place belonging to, or subject to his Majesty, shall hire, retain, engage or procure, or shall attempt or endeavor to hire, retain, engage, or procure any person or persons whatever to enlist, or to enter or engage to enlist, or to serve or to be employed in any such service or employment as aforesaid, as an officer, soldier, sailor or marine, either in land or sea service, for or under, or in aid of any foreign prince, State, potentate, colony, province, or part of any province or people, or for or under, or in aid of any person or persons exercising or assuming to exercise any powers of government as aforesaid, or to go, agree to go, or embark from any port of his Majesty's dominions for the purpose, or wish to be so enlisted, entered, engaged or employed as aforesaid, whether any enlisting money, pay or reward shall have been, or shall be actually given or received or not:"] "In any or either of such cases, every person so offending shall be deemed guilty of a misdemeanor, and upon being convicted thereof, upon any information or indictment, shall be punished by fine and imprisonment, or either of them, at the discretion of the court before which such offender shall be convicted."

In this case, the aforesaid paper embracing the aforesaid extract, and the whole statute upon this subject, may be referred to as evidence offered in the case by plaintiff.

It was ordered that this case be transferred to the Law Term in this district for the consideration of the whole court.

*Whidden & Heywood*, for plaintiff.

*Bingham, Burns & Fletcher*, for defendant.

NESMITH, J.    The facts found in this case clearly evince that a con-
tract was made by the parties in this State, to be performed in Canada.
The general rule is that the contract, in respect to its construction and
force, is to be governed by the law of the country or State in which it
is to be executed.   *Lord Mansfield,* in *Robinson* v. *Bland*, 2 Bur-
rows 1077 ; Story's Conflict of Laws, 233, 234 ; 2 Kent's Com. 459 ;
*Blanchard* v. *Russell*, 13 Mass. 4; 2 Met. 398 ; *Mather* v. *Bush.*
16 Johns. 233.    It is also a general rule, applicable to contracts, that
no people are bound to enforce or hold valid in their courts of justice,
any contract which is injurious to their public rights, or offends their
morals, contravenes their general policy, or violates a public law.  Story's
Conflict of Laws, 203, 215.    Whatever constitutes a good defence
by the law of the place where the contract is made or is to be performed,
is equally good in every other place where the question is litigated.    2
Kent 459.

The plaintiff advanced his money to the defendant in this State, as
well as in Canada, for the manifest purpose of carrying into effect a con-
tract, the direct tendency of which was to violate a public law of that
country.    The contract must be, therefore, treated as void, and the
money paid under it cannot be recovered back.    In *Smith* v. *Bromley*,
Dunlop Rep. 695, note, *Lord Mansfield* says : "If the act is itself im-
moral, or a violation of the general laws of public policy, then the party
paying shall not have this action to recover back the money ; for where
both parties are equally criminal against such general laws, the rule is
*"potior est conditio defendentis."*  1 Story's Equity, secs. 296 and
298.    In note to sec. 298, the authorities at law and in equity are col-
lected.    *Cutler* v. *Welch*, 43 N. H. 498 ; *Lewis* v. *Welch*, 14 N.
H. 294  *White* v. *Hunter*, 23 N. H. 128.  *Brackett* v. *Hoyt*, 29 N.
H. 264 ;  *De Grout* v. *Van Deuzen*, 20 Wend. 390.

The plaintiff objects to the mode in which the foreign law of Canada
was proved in this case.    In proof of the laws of a foreign country,
the testimony of any person, whether a professed lawyer or not, who
appears to the court to be well informed on the point, is competent.
*Pickard* v. *Bailey*, 26 N. H. 152, and authorities cited.

Foreign laws are to be proved as facts by evidence addressed to the
court, and not to the jury.    *Ibid.*  1 Peere Williams, 431 ; 2 Cranch
236 ;  *Thompson* v. *Ketchum*, 8 Johns. ; *Francis* v. *Ocean Ins. Co.*,
6 Cow. 429, and note ;  *Lincoln* v. *Battelle*, 6 Wend.  475 ;  *Dollfus*
v. *Frosch*, 1 Denio 367 ;  *Munroe* v. *Douglas*, (5 N. Y.) 1 Selden
447 ; Story on Conflict of Laws, 528.    The general principle, that the
best testimony or proof shall be required, which the nature of the thing
admits of, applies to the proof of foreign laws as well as to other facts.
Story, 528–9.

In this case, the testimony of respectable attorneys in this State was
received who had a direct interest to investigate this precise question in
Canada, and who had their information from authentic and well informed
sources.    The foreign statute law prohibiting the enlistment of soldiers
in Canada, or within the jurisdiction of Great Britain, to be employed
in such service here, and imposing high penalties upon such as might

offend against the same, was pointed out, or furnished to the witnesses by those who were practising daily under the law, and had the best means of becoming fully acquainted with its provisions and all the law applicable to this class of offences, and had no occasion to misrepresent. Hence, we are inclined to believe that the law prohibiting the contract of the parties in this instance was properly proved and authenticated by competent testimony; and that the plaintiff cannot maintain this action to recover any part of his advancements.

The counsel for plaintiff abandons the payment made to defendant in Canada. As to the other sum, advanced here, the true test to be applied in order to determine whether plaintiff can collect it is, whether the plaintiff requires any aid from the illegal transaction to establish his case. *Simpson* v. *Bloss*, 7 Taunt. 246; *Callagher* v. *Hallet*, 1 Caines 104. We do not feel called upon to decide whether the plaintiff's or defendant's statement of the contract was in every respect the most correct in point of fact, but under all the circumstances, it appears to us impossible so to separate and apply the testimony in the case as to leave the plaintiff an innocent party. Under the agreement, he was to profit by the defendant's services. The journey to Canada was made, and the money was advanced, with a view of procuring to himself further prospective illegal gain through the enlistment of men to be obtained in Canada, and to be aided throughout by the influence and experience of the defendant.

There must be

*Judgment for defendant.*