NEW-YORK,
May, 1823.

SHERRILL,
v.
HOPKINS.

---

JOSEPH SHERRILL, administrator of HENRY SHERRILL,
*against* EBENEZER HOPKINS, JUN.

DEBT upon a bond, from *Hopkins* to the plaintiff's intestate, dated *April* 12th, 1806, alledged in the declaration to have been executed at *Canaan*, viz. at *Ithica*, in the county of *Tompkins*, where the venue was laid. The 2d plea was as follows: " And for further plea, &c. (*habere non debet, &c.*) because he says, that after the making the said supposed writing obligatory, in the said declaration mentioned, and laws of some other place. Accordingly, an action on a contract made in 1806, between citizens of *Massachusetts*, is barred by a discharge under the insolvent act of 1801. And even if the contract had been made in that state, yet to the plea of such a discharge, the plaintiff must reply and shew the law of that state to be against the operation of the discharge; otherwise the law there will be presumed the same as our own. The form of a plea of discharge under the insolvent act of 1801, 1 R. L. by K. & R. 428.

The law of the state, &c. where a contract is made, controls it, unless it appear on its face, that it was to be performed, or was made in reference to the

before the commencement of this suit, to wit, on the 29*th*
day of *April, A. D.* 1806, to wit, at the city and in the county of
*Albany,* the said *Ebenezer,* being then and there an insolvent
debtor, within the true intent and meaning of the act of the
Legislature of the state of *New-York,* passed the 3*d* day of
*April, A. D.* 1801, entitled " an act for giving relief in cases
of insolvency," did, in pursuance of the said act, in conjunc-
tion with so many of his creditors, who had debts *bona fide*
owing to them, by the said *Ebenezer,* amounting to, at least,
three fourths of all the monies owing by him, whether the
same were then due or to become due thereafter, present a
petition to the honourable *James Kent, Esquire,* Chief Justice
of the Supreme Court of Judicature, of the People of the
state of New-York, setting forth that the said *Ebenezer* had
become an insolvent debtor, and entirely incompetent to the
payment of his debts, and praying that the property of the
said *Ebenezer* might be assigned and delivered unto *W. L.*
an assignee appointed by the said creditors, for the
benefit of all the creditors of the said *Ebenezer,* and that
he might be discharged from his debts according to
the provisions of said act ; and such proceedings were,
thereupon, had, agreeably to the directions of the said
act : That, afterwards, to wit, on the 1*st* day of *August, A.
D.* 1806, at the city of *Albany,* aforesaid, the said *James Kent,
Esquire,* being Chief Justice, as aforesaid, in pursuance of
the said act, discharged the said *Ebenezer* from his debts, ac-
cording to the prayer of the said petition, by a writing under
the hand and seal of the said Chief Justice, which said wri-
ting is in the words and figures following, to wit : [*the dis-
charge verbatim*] as, by the said discharge will fully and at
large appear. And the said *Ebenezer* further avers, that he is
the identical *Ebenezer Hopkins, Junior,* in the discharge
above set forth named, and not another or different person ;

" and this, &c. wherefore, &c."—Replication. " That at the
time when the said debt, mentioned in the said writing obli-
gatory, set forth in the declaration of the said *Joseph,* in this
suit, was contracted, and when the said writing obligatory was
executed, neither the said *Henry Sherrill,* the creditor, nor
the said *Ebenezer Hopkins, Junior,* the debtor, mentioned in

the said writing obligatory, were inhabitants of, or residents within the state of *New-York.*"

General demurrer and joinder.

*H. Stephens,* in support of the demurrer. The plea of the discharge in this suit, which was under the insolvent act of 1801, was drawn from that in the case of *Weston* v. *Robinson, MS. Oct. term,* 1816.(a) To this plea the plaintiff tenders an immaterial issue. It is of no importance where the parties resided. The contract must be governed by the laws of the country where it was made.(b) On this principle, if the plaintiff wished to avoid our insolvent act, he should have averred that the contract was made out of this state. This he could not do. He has alleged, in his declaration, that it was made in the town of *Canaan,* within this state ; and that averment is material, where the place of making the contract is so.

(a) *Cowen's Treat.* 438.

(b) *Dodge* v. *Phelps,* 1 *John. Cas.* 139. *Smith* v. *Smith,* 2 *John. Rep.* 235. *Ruggles* v. *Keeler,* 3 *id.* 263.

*Woodcock & A. D. W. Bruyn,* contra. They insisted, that the effect of the insolvent law, upon the contract in question, depended upon the inquiry, whether the parties resided in this state, at the time of entering into it—not the place where it was made, or at which it was to be performed. The cases, which they relied upon, as countenancing this distinction, are, with many others, cited and considered in the opinion of the Court.

*Curia,* per SUTHERLAND, J. The question, presented by this demurrer, is, whether a discharge, under our insolvent act, of *April* 3, 1801, which not only liberates the person of the debtor, but discharges him from all liability for the debt, is a good plea, in bar to a suit upon a bond, *executed in this state,* in 1806, the *obligor and the obligee being, at the time of giving the bond, citizens and inhabitants of another state.*

Anterior to the cases of *Sturges* v. *Crowninshield,* and *McMillan* v. *McNeil,* in the Supreme Court of the *United States,*(c) the validity of such a discharge could not have been questioned, in this Court : for the case of *Penniman* v. *Meigs,*(d) goes the whole length of deciding, that a discharge, under the insolvent act of *this state,* is a bar to all

(c) 4 *Wheat.* 122, 209.

(d) 9 *John. Rep.* 325.

suits brought *here,* upon antecedent contracts, *wherever made.* In that case, the suit was brought upon a promissory note, given in the state of *Connecticut,* (it is to be presumed, by an inhabitant of *Connecticut,*) the payée, who was the plaintiff in the suit. being an inhabitant of *Rhode-Island.* The discharge of the defendant, under our insolvent act, was, notwithstanding, held a good defence to the action.

But the law is undoubtedly changed, by the cases to which I have alluded ; and it is now clearly settled, *that a contract, made out of this state, between parties, not citizens or inhabitants of this state, cannot be discharged by our insolvent laws.* To give to them that operation, it is held, would be to make them *laws impairing the obligation of contracts.* And the power of passing such laws being prohibited to the states, by the constitution of the *United States,* they are, of course, unconstitutional and invalid. This is the precise doctrine of the case of *McMillan* v. *McNeil.* There the parties to the contract were inhabitants of *South-Carolina,* and the contract was made there. *McMillan,* the debtor, subsequently removed to the state of *Louisiana,* where he. was duly discharged from all his debts, under an insolvent law of that state. To a suit, brought by *McNeil,* against him, upon the contract made in *South-Carolina,* he pleaded his discharge. Upon demurrer to the plea, the discharge was held invalid, on the grounds which have been stated.

The case of *Sturges* v. *Crowninshield,* of *Rosevelt* v. *Cebra,*(e) and *In the matter of Wendell,*(f) determine, that a contract, between citizens of the *same state,* is not affected by a discharge of the debtor, under an insolvent law of that state, *passed subsequent to the making of the contract.* And, in *Mather* v. *Bush,*(g) this Court decided, that a discharge, under the insolvent act, of *April 3d,* 1811, was valid, in relation to all contracts made between citizens of this state, subsequent to the passage of that act. But what the effect of such a discharge would be, upon a contract made in this state, (after the passing of the act) *between citizens of another state,* has not been expressly decided : though, I

(e) 17 John.
Rep. 108.
(f) 19 John.
Rep. 153.

(g) 16 John.
Rep. 233.

think, the reasoning and analogies to be drawn from the cases
adverted to, go very far towards settling it.

This Court, in *Mather* v. *Bush*, held, that the insolvent act
did not impair the obligation of the contract; and that the
discharge was, therefore, valid : because, the contract hav-
ing been made between citizens of this state, after the pass-
ing of the law, " was made under the law, and is presumed
to have been made with reference to it; and the parties are
legally conusant of it at the time. The contract, in such
case, is not impaired by the law, for the law is part of the
contract."

The same doctrine is held in *Blanchard* v. *Russell*,(*h*) and     (*h*) 13 *Mass. Rep.* 16.
the same reason assigned ; though, in that case, only the
*debtor party to the contract*, was an inhabitant of the state
where the contract was made. In *Smith* v. *Buchanan*,(*i*) a     (*i*) 1 *East*, 6.
discharge, under the insolvent law of *Maryland*, was held to
be no bar to an action brought in *England*, by an *English
subject*, *upon a contract made in England*, the other party
to the contract being, at the time of making it, a citizen
of the *United States*.

In *Van Raugh* v. *Van Arsdaln*,(*j*) a discharge, under the     (*j*) 3 *Caines*, 154.
insolvent laws of *Pennsylvania*, was held to be no bar to a
suit brought by the endorsee, against the endorser, of a pro-
missory note, *the endorsement having been made in this state,
and the endorsee being, at the time of the endorsement, an in-
habitant of this state, and the endorser and defendant an in-
habitant of Pennsylvania.*

In all these cases; considerable importance seems to be at-
tached to the circumstance, that one, or both of the parties,
were inhabitants of the state or country where the contract
was made. But, with great deference, it does appear to me,
that all these cases stand upon a principle entirely indepen-
dent of that circumstance. It is that of the *lex loci con-
tractus* : that the law of the place where the contract is
made, must govern the construction of the contract; and
that, whether the parties to the contract are inhabitants of
that place or not. The rule, I apprehend, is not founded
upon the allegiance due from citizens or subjects to their
respective governments, but upon the presumption of law,

NEW-YORK,
May, 1823.

SHERRILL
v.
HOPKINS.

that the parties to a contract are conusant of the laws of the country where the contract is made; that it is made with reference to those laws, and that they, therefore, form a part of the contract. That this is the principle of the rule, is evident, from the exceptions to it. For where it appears that the place of performance is different from the place of making the contract, then it is to be construed according to the law of the place where it is to be performed, though neither of the parties reside or owe any allegiance there.(*k*)

(*k*) *Huberus,*
2 *vol. B.* 1,
*Tit.* 3,*page* 26.
*Vide note to*
*Emory* v. *Gre-*
*naugh,* 3 *Dall.*
370.

In *Robinson* v. *Bland,*(*l*) a bill of exchange, drawn in *France,* but *payable* in *England,* for money won at gaming, in *France,* was held to be governed by the law of *England,* and, therefore, void; and, upon the first argument of the case, *Lord Mansfield* intimated, that it made no difference whether the parties to the contract were subjects of *France,* or *Englishmen,* resident there.(*m*) The same general principle is acknowledged in all the following cases: *Melan* v. *Duke of Fitz James,* 1 *Bos. & Pull.* 138. *Smith* v. *Smith,* 2 *John. Rep.* 235. *Thompson* v. *Ketcham,* 8 *id.* 189. *Harrison* v. *Sterry,* 5 *Cranch,* 289. *Slacum* v. *Pomeroy,* 6 *Cranch,* 221. *Lanusse* v. *Barker,* 3 *Wheat.* 101, 146. In *Thompson* v. *Ketcham,* it was held that parol proof was not admissible to shew that a note, made in *Jamaica,* was to be paid in *New-York.*

(*l*) 1 *Black.*
*Rep.* 258.

(*m*) *Ibid. p.*
247. *Vide* S.
C. 2 *Burr.*
1077.

The rule, therefore, upon this subject, is, that the law of the place where the contract is made, is to control it, unless it appear, upon the face of the contract, that it was to be performed at some other place, or was made with reference to the laws of some other place: and the reason of the rule is, not the allegiance due from the contracting parties to the government, where the contract is made, or is to be executed, but the supposed reference which every contract has to the laws of the state or country where it is made, or is to be executed, whether the parties are citizens of that state or country, or not.

The bond, in this case, therefore, having been made in this state, and it not appearing, upon the face of it, that it was to be paid elsewhere, is to be construed according to the law of this

state. And having been made subsequent to the passing of the law, under which the defendant was discharged, by the established law of this state, as pronounced in *Mather* v. *Bush*, the discharge was no violation of the obligation of the contract, and is, therefore, valid.

The plaintiff having failed to aver or shew what the law of *Massachusetts* is, we are to presume it to be the same with our own. The case of *Thompson* v. *Ketcham*, is precisely analagous, upon this point, to the case under consideration.

The defendant, therefore, upon every ground, is entitled to judgment upon the demurrer.

Judgment for the defendant.(n)

(n) *Smith* v. *Mead*, 3 *Con. Rep. N. S.* 253, *S. P. and vid. also, Wood-bridge* v. *Wright et al. id.* 523, *and Medbury* v. *Hopkins, id.* 472.