Mr. Justice Thacher
delivered the opinion of the court.
The Agricultural Bank of Mississippi recovered a judgment in the circuit court of Adams county against John Routh and Austin Williams, in an action of assumpsit, founded upon certain promissory notes made in 1839, whereon said Routh and Williams were makers, together with Sh’ipp, Ferriday & Co. in liquidation. The cause has been brought into this court by said Routh and Williams by virtue of the writ of error; but the said writ has since been dismissed here as to Williams. We are called to examine the legality of the judgment against Routh.
There have been two trials in the circuit court. The result *185 of the first was a verdict for Routh, but a new trial was granted there, and upon that trial, a verdict and judgment were rendered for the plaintifFs in the action.
The declaration, in the usual form of actions in assumpsit, alleges that John Routh, by his attorney William Ferriday, made the notes whereon the suit was founded. Routh pleaded non-assumpsit, and a special plea that he did not make the notes set forth in the declaration, and fortified his plea by an affidavit, in which he asserts, that the power of attorney executed by him to Ferriday authorized his said attorney to sign and use his name only in transactions with the Agricultural Bank, for his'sole benefit and in his own affairs and concerns with the bank; and that the notes sued upon were not for his use and benefit, but for the use and benefit of said Ferriday, as one of the commercial firm of Shipp, Ferriday & Co., all of which was known to the plaintiffs in the action; and that this power of attorney was lodged with the plaintiffs, and constituted the only authority under which the plaintiffs received the signature of said Ferri-day for him; and that although he had executed to Ferriday in the state of Louisiana a general power of attorney to sign his name, the same was given to be used solely .in the city of New Orleans.
Upon the first trial, the plaintiffs, after calling upon the defendants to produce the original, offered in evidence a certified copy of the general power of attorney executed by Routh to Ferriday in 1837. Its introduction as evidence was objected to generally by the defendant as incompetent, but no special cause of objection is set out in the record as having been made upon the trial.
The introduction of this copy of the general power of attorney from Routh to Ferriday, as will hereafter be seen, constitutes in our minds the most important and almost the only question in the cause. As no special objection to its introduction was offered, we are left to conjecture what the ground of objection really was, and, we may add, that objections so general are entitled to but little consideration. It often happens, that if specific objections are made upon a trial, the opposite party may remove *186 them upon that trial, or obviate their influence by other or further testimony.
It is presumed, that the objection to the introduction of the copy was based upon the assumption that the original should have been produced, or legal evidence introduced to show that like instruments were subjects of record in the state of Louisiana, in which event only a copy could be held admissible. In the latter event, a specific objection would have compelled such preliminary evidence, if it existed, and have avoided the objection.
The copy offered in evidence has appended to it the certificate of H. B. Cenas, notary public, that it is a true copy of the original power of attorney, and governor’s certificate annexed to an act of deposit of said document passed before him, &c. This is the attestation" of the depositary of the original power under his hand and seal of office. And to this is added the certificate in the usual form of the governor of the state of Louisiana, with the seal of state, according to the act of Congress, entitled “ An act supplementary to an act, entitled án act to prescribe the mode in which the public acts, records and judicial proceedings, in each state, shall be authenticated, so as to take effect in every other state.” H. & H. 791.
The certificate of the governor of Louisiana, that the attestation of Cenas was in due form, and that he was the proper officer so to authenticate, was evidence that the instrument offered in evidence was a record or exemplification by the law of that State, to be kept in a public office of that state not appertaining to a court. It was at all events -prima facie evidence of the fact, and then it fell upon the opposite party to rebut it by producing the original, and showing it was not recorded, or the law which dispensed with that ceremony. Hastings v. The Blue Hill Turnpike Co., 9 Pick. 80.
Upon the first trial, therefore, we think, under the circumstances, that the copy of the power of attorney was properly admitted in evidence.
The plaintiffs then read the notes in evidence, after a similar objection to that made to the introduction of the copy of the *187 power of attorney. This objection probably grew out of the supposed inadmissibility of that copy, but that objection not being sustained here, the notes were properly admitted as having been executed under that power already in evidence.
• Upon the part of the defence, Routh read in evidence a special power of attorney from himself to Ferriday and others, executed in 1834, limiting the exercise of their, powers in using and signing his name to affairs in which he was solely interested. He also read an agreement between himself and the plaintiffs of the same date, confirming in all respects the last above described power of attorney. He then proved by Ayres P. Merrill, who was cashier of the Agricultural Bank at the time of the date and the discount of the notes, that the bank, so far as he knew, acted upon this latter power of attorney as Ferriday’s authority to make notes in Routh’s name, but did not know what operated on the minds of the directory of the bank in discounting the notes, or whether they were informed of the existence of other powers of attorney from Routh to Ferriday; and that the amount of the discounted paper was passed to the firm of Shipp, Ferriday & Co., and not to that of Routh. There was no evidence offered by him that tended in the minutest degree to show that the plaintiffs knew of the instructions alleged to have been given by Routh to Ferriday, as to the limited use he was to make of the general power of attorney.
The power was executed in Louisiana by Routh, a citizen of that state, to Ferriday, a citizen of Mississippi. It is broad and general, and upon its face has no limitation as to its use either of time or place. The circumstance that it was executed in Louisiana cannot confine its operation to that state, when its terms are so extensive and expansive, and especially when the agent is a citizen of another state. The very fact of the appointment of a resident of another state to the office of attorney, is an additional feature of the generality and universality of the power, and at the least would warrant the use of the power in the state in which the attorney lived. But it is settled that, in a case like this, the onus probandi was upon the defendan t to show that the law of Louisiana is different from that of this *188 state, if he wished any advantage from it. In the absence of such proof, the court, in cases like the present, should act according to' its own laws. Harris v. Allnutt, 12 Louis. R. 465; Sherrill v. Hopkins, 1 Cow. 103; Legg v. Legg, 8 Mass. 99; Harper v. Hampton, 1 Harr. & John. 622; Starr v. Peck, 1 Hill, 270. In Arayo v. Currell, 1 Louis. R. 541, Judge Martin says : “ Where a court knows nothing of the laws of a country, it presumes them to be the same as those of its own. This is the general rule, and the presumption rests on the ignorance in which it is of any other. Perhaps a better reason for deciding according to our own law is, that where we know no other by which our decision may be formed, we must determine according to it, or do so arbitrarily.”
But even admitting that the particular laws of Louisiana put some limitations to the authority of an attorney acting under a general power, they could have no force abroad unless known to those contracting with him. In the above stated case from Louisiana, Judge Martin, upon this point, remarks: “ If the limitation arises not from the owner’s instructions, but from the particular laws of the country from which the vessel has sailed, must not the consequences be the same 1 Can these laws limit the master’s power more effectually than the owner could, or can they extend farther? We think not. They have no force in a foreign country, where they are presumed to be equally unknown.”
A general power was confided to the attorney; but it is said that Routh, by private instruction, limited its use to the city of New Orleans. There was no evidence as to this, nor that the plaintiffs knew of the instruction and limitation. The bank was not bound by any limitation which Routh may have affixed by distinct instructions. Story, in his work on Agency, p. 127, declares the law, that “it would be the height of injustice, and lead to the grossest frauds to allow a principal to set up his own secret and private instructions to the agent, limiting that authority ; and thus to defeat his acts and transactions under the agency, when the party dealing with him had, and could have, no notice of such instructions.” In Lloyd’s edition of Paley on *189 Agency, p. 199, note, it is stated that “a general authority arises from a general employment in a specific capacity; such as factor, broker, attorney, &c. As between himself and his broker, &e., any deviation from instructions will render the latter accountable to him for any loss he may sustain thereby. But, as regards himself and third parties, who may have dealt with the broker, &c., any limitation of the áuthority not communicated to them can have no effect.”
It is not necessary that a person dealing with another, as a general agent or attorney, should be informed of the fact as to his authority or agency. The dealer takes that risk. If the person representing himself a's án agent have, in point of fact, authority to act for and bind his principal, then the dealer takes the benefit of his authority; if he have not, he can look only to the supposed agent. Indeed, this doctrine has been carried to a great length. In Jones v. Littledale, 6 Adol. & Ellis, 490, Lord Denman said : “ There is no doubt, that evidence is admissible on behalf of one of the contracting parties, to show, that the other was agent only, though contracting in his own name; ánd so to fix the real principal.” It is always a question of fact, for the agent having been contracted with as agent, the credit is given to the principal; wherefore, if the relation of principal and agent, existed, co-extensive with the act of agency performed, it consequently binds the principal to the contracting party.
It hence follows that Ferriday had authority by agency of later date than his special power from Routh to make the notes. The finding of the jury upon the first trial was clearly contrary to the evidence in the case, and a new trial was properly allowed by the circuit court.
All that we have remarked in regard to the admission in evidence, upon the first trial of the general power of attorney from Routh to Ferriday, is applicable to the same question upon the second trial. Upon that trial, in addition to the certificate of Cenas, which has been described as appended to the copy of that power of attorney, there is added the deposition of William L. Poindexter, who states that he was the notary public before whom the power of attorney was executed in Louisiana, and *190 that the original was deposited in the notarial office of H. B. Cenas in the city of New Orleans, who, upon request, had refused to deliver them up, for the reason that they constitute a part of his notarial records, and cannot be taken from his office.
As no special objection was taken upon the trial to the competency of the evidence, and as the items of that objection are made for the first time here, we can look to the law ruling in Louisiana as to the propriety of the evidence, especially if it can be shown that, upon a third trial, no other result could occur. The copy would have been admissible in evidence in the courts of that state. The certificate of Cenas describes the power in his hands as so deposited per act, &c., and, as we learn from a brief of the defendants in error, quoting from 8 Merlin, Rep. de Jurisprudence, verbo Notaire, the original of such instruments cannot be given or delivered up. The extract is as follows: “ Les depots que Ven fait aux notaires de pieces dont on veut assurer Vexistence ne sont pas á proprement parler, des depots mais des remises pour minute. Aussitót qiVil est dressé acte de ces remises, elles font partie du depot public, dont le notaire n’est que le gardien,” &c. [Papers deposited in the hands of notaries for the purpose of safe keeping, until the proper time to prove their existence, are not properly called deposits, but are acts for record. So soon as a certificate of such deposit is drawn, the papers then become a part of the “ public papers,” of which the notary is only the guardian.]
The general power of attorney, being legally in evidence, together with the notes, and nothing being made to appear in any way to defeat the action, either partially or totally, we hold the second verdict and judgment to have been correct. ■
It may be proper to observe, that the question of Duncan’s competency to testify was improperly decided by the circuit court, but his exclusion upon another trial could not effect a different result, as his testimony was merely cumulative. The question of legal competency to testify is never a question of morals, but of law. It might be true that Duncan disclaimed all intention to assert his legal rights over his wife’s stock in the bank, or its profits; but the law gives him those rights, and *191 therefore attaches to him an interest. Besides, it is contrary to the policy of the law to permit a husband to testify in a case where his wife is interested; and although that special objection was'not made, it will always be considered whenever the circumstance arises.
The judgment must be affirmed.