Slosson, J.
The question is, whether a discharge, under the English bankrupt law, of a debt contracted and payable in England, and by a person residing there, due to a citizen of this State, can be pleaded in bar to an action upon it in the Courts of this State.
The effect of an assignment under the English bankrupt laws, as operating a transfer of the debts, moneys and property due to or belonging to the bankrupt situated in this country, has been the subject of frequent discussion; and it may now be considered as settled in this State, if not in most of the other States of the TJnipn, that while, by comity, the assignees in bankruptcy are allowed to sue in our Courts in order to recover claims or property due or belonging to the bankrupt within our own territory, they do not acquire, by the assignment itself, a lien on such debts or property so as to entitle them to a priority over a resident creditor who has attached the same subsequently to such assignment, and before the assignee has asserted his claim to the property by a resort to legal process in our own Courts.
As respects property of the bankrupt found within our own jurisdiction, the law gives the preference to resident creditors, if *462 they first assert their title. The assignees are considered as standing in the shoes of the bankrupt, having no better rights and subject to the equities to which he is subject; and when permitted to sue here, they do so as representatives of the bankrupt, and not as assignees having an absolute right as against all the world, and they are subject to our laws in respect to the remedy. The assignment in bankruptcy, being statutory, or by virtue of an act of the Legislature, and not voluntary, has no extra-territorial operation, at least in passing the title to the bankrupt’s property beyond the country where the law was passed. It may entitle the assignee to sue here, but, as I have already said, it is by comity' only, and the assignee, when he comes here, has no better title to the property located here than the bankrupt had; so that, if a creditor of the bankrupt has already attached the property, the foreign assignee is remediless. If no such attachment has intervened, there is no difficulty in the assignee acquiring, bv such remedies as the law prescribes, a lien which shall be paramount to any which a resident creditor can afterwards acquire. The State regulates the subject of property found within its limits; and while, by courtesy, it permits foreign assignees in bankruptcy to sue here, it will not give them, by virtue of a mere statutory assignment which can have no extra-territorial operation, a preference in respect to such property over the claims, first asserted, of our own resident citizens.- This is not repudiating or denying any efficacy to the foreign law: it is merely limiting the boundaries of that comity by which the assignees under the law are permitted to act in our Courts in asserting their claims by virtue of it to property of the bankrupt found within the jurisdiction of the Court. It places the assignees on an equal footing with the resident creditors of the bankrupt, and then gives to the one who acquires the first lien, by attachment or other process under our laws, the priority. It is merely asserting that, by virtue of the assignment itself, the foreign assignee does not acquire a priority of title to property of the bankrupt within- our territory over a domestic creditor who has, by due process of our own laws, acquired a lien upon it, before the assignee has asserted his claim in our Courts. The law, which thus permits the domestic creditor to acquire a lien on the personal property of, or debts due, the bankrupt within our own limits, over the title created by *463 the assignment in bankruptcy, creates, it is true,, an exception to, or limitation of the rule which is true in general, to wit, that personal property, as to its transmission and disposition, is governed by the law of the domicil of the owner; but it is- an exception created by our own law as against a foreign law which we are not bound to recognize, and in favor of our own citizens and for their special protection. (Story’s Conf. Laws, §§ 410, 412; Holmes v. Remsen, 20 J. R, 229.)
The case of Holmes v. Remsen was fully recognized and sanctioned by the Court of Appeals in Hoyt v. Thompson, (1 Seld., 340, 341,) and the case of Abraham v. Plestoro, (3 Wend., 358,) was held not to have authoritatively established a different doctrine.
It will thus be seen, that under the limitation of a preference in favor of the domestic creditor who first attaches the bankrupt’s property within our own jurisdiction, the foreign law is recognized in our courts, and the question which we are called to pass upon by this demurrer, is, how far we shall recognize a discharge of the debt itself under a foreign bankrupt law, when sued upon in this State.
The decision of this question is in no wise affected by the exceptional rule in favor of the domestic creditor above stated, nor is an argument against our recognition of the validity of such discharge, to be drawn from the discrimination thus made in favor of our own creditors. It depends upon the application of the rule, admitted to be of universal force where the common law prevails, that the law of the place of the contract where it is made and to be performed, is the law of the contract itself. Much ingenuity has been expended in discussing the theory of this rule, in cases where the place of the contract is different from that of the forum in which the action is brought, some founding the rule upon the idea of an implied assent to be bound by it, as a part of the contract, on the part of all the parties to it, and others holding that the law binds by its own force, without the aid of an assent of the parties express or implied. Those who maintain the first of these views, admit that, for all purposes of giving construction and operation to the contract, the parties may well be assumed to have assented to the laws which prevail in respect to it where the contract was made, but that it is absurd *464 to suppose that the parties could have assented to the operation of a law which should, against their will, dissolve the contract itself, and of this opinion was the Court of Appeals in Donnelly v. Corbett. (3 Seld., 506.) It is, in my judgment, unnecessary to resort to any such presumption of assent on the part of the creditor to be bound by a law which discharges the contract. The true rule is, that the law of the place of-the contract absolutely governs it, propria vigore, in all respects; it not only gives it life and determines the extent of its obligation, but prescribes the mode of its execution and how it may, and in certain contingencies shall, be satisfied. The principle is well expressed by Chief Justice Parker, in Blanchard v. Russel, (13 Mass., 4,) and quoted and adopted by Chief Justice Shaw, in May v. Breed. (7 Cush., 36.) “We think,” he says, “ it may be assumed as a rule affecting all personal contracts, that they are subject to all the consequences attached to contraéis of a similar nature by the laws of the country where they are made, if the contracting party* is a subject of or resident in that country where it is entered into and no provision is introduced to refer it to the laws of any other country.”
Chief Justice Shaw, in the case last cited, thus expresses it: “The principle is this, that the law of the place of the contract, which may be called the law of the contract, gives it its character, makes it what it is, fixes its limits and obligation, fixing the time when it shall commence, how it shall be executed or satisfied, and how it shall be terminated and discharged; when, therefore, such a contract is discharged by force of the same law which gave it its origin and .effect, it is extinguished, and no longer exists as a contract,” and he adds: “ The law under which such discharge is obtained can hardly be said (when invoked as a defense in a suit upon the contract in another country) to have an extra-territorial operation; it operates within the country where the contract was made in .fixing its character and • lCgal effect, which, upon the happening of the contemplated contingency, put an end alike to its obligation and to its execution.”
I can add nothing to the force or precision of this exposition of the principle of the rule in question. It was enunciated in a case identical in every essential particular with the present one, and the foreign discharge was held to be a perfect bar.
*465 The same principle is recognized and adopted in England, in its application to a discharge obtained in this country, Lord El-LENBOROUG-h distinctly asserting that,- “ What is a discharge of a, debt in the country where it was contracted, is a discharge of it everywhere.” (Potter v. Brown, 5 East., 124.)
It was also recognized and adopted in this State, in the case of Hicks v. Brown, (12 J. R., 142,) in which a discharge, under the insolvent laws of Louisiana, of a drawer of a bill of exchange residing in New Orleans, and who drew the bill there in favor of the plaintiff, a citizen of another State, upon a party also a citizen of another State, and which bill was protested for nonacceptance, was held, in a suit upon the bill in this State, to be a perfect bar, on the principle of the lex loci.
No reference appears to have been made in this case, to the prohibition against the passage of laws by the several States impairing the obligation'of contracts, as affecting the question.
In Sherrill v. Hopkins, (1 Cow., 103,) the Supreme Court of this State fully recognized, adopted and enforced the same rule, holding an insolvent’s discharge, under the laws of this State, to be a perfect- defense, the contract having been made here, notwithstanding the plaintiff, the creditor, was not at the time of making of said contract, a citizen of this State. “ The rule upon this subject,” said Justice Sutherland, “is, that the law of the • place where the contract is made is to control it, unless it appear upon the face of the contract that it was to be performed at some other place, or was made with reference to the laws of some other place, and the reason of the rule is, not the allegiance due.from the contracting parties to the government where the contract is made or is to be executed, but the supposed reference which every contract has to the laws of the State or country where it is made or is to be executed, whether the parties are citizens of -that State or country or not.”
The elementary writers expressly affirm the same rule,' and hold that the discharge of the debtor under the bankrupt laws of the country where the contract was made, is a good discharge in every other country, and pleadable in bar. (2 Kent’s Com., 7th ed., p. 574, marg. 459; Story’s Conf. Laws, § 335.)
The case of Donnelly v. Corbett, (3 Seld., 500,) does not conflict with this rule; for, in that case, the original contract was made *466 in Hew York, and that was held to be the place of the contract, though the maker lived in South Carolina, and the note was payable there. A discharge under the insolvent laws of the latter State could not, therefore, be said to be in pursuance of a law of the place of contract. Besides, that case was decided, in part, at least, upon the principle that, as respects the plaintiff, a citizen of Hew York, the insolvent laws of another State discharging the obligation of the contract were .invalid under the Constitution of the United States. Unless the case of Donnelly v. Corbett is to be considered as establishing the doctrine that the Courts of this State are to treat as wholly inoperative all extra-territorial bankrupt or insolvent laws as against creditors residing in the State and suing here, I can see no reason in that decision for holding that we are not to give to the bankrupt laws of England, as operating upon the contract itself, all the force and effect which any other law of the place of the contract, and applicable to it, would have, notwithstanding some observations of the Court in announcing its decision in that case, I do not understand it to go to any such length. It was unnecessary to the decision that it should go that length. It was a case arising under our own laws and the Constitution of the United States. Cases arising between citizens of different States, on contracts made within the United States, and in which the validity of insolvent laws, operating on the contract, depends on the application of the constitutional prohibition before referred to, are not in pari materia with cases arising under the English bankrupt laws; and no argument can be drawn from the doctrine which must control such cases, against the binding force and effect of a discharge under .the latter laws. (Story’s Conf. Laws, § 341.)
Upon both authority and principle, I hold that the contract now in question was affected by the bankrupt laws in force in England at the time it was made, as much as by any law of that country regulating its force or giving it construction, or determining the mode or time of its payment; notwithstanding these laws- do, in certain contingencies, and on certain conditions, put a final end to the contract itself. The discharge in this case is a perfect bar to the action.
Woodbuff, J., concurred.