*JACOBSON & COMPANY v. ADAMS EXPRESS COMPANY.

1. LOSS OF PACKAGE—LAW OF PLACE OF DELIVERY GOVERNS.

Where a package was delivered to a common carrier in New York, to be delivered in Ohio, and was lost by negligence, in an action for such loss, the place of delivery is the place of performance of the contract and the law of Ohio governs.

2. STIPULATION IN RECEIPT OF CARRIER CONSTRUED.

In the foregoing case, a receipt of the company, stating that, in no event shall the holder demand beyond the sum of $50, at which the article forwarded is valued, "not signed by the shipper and no statement made by him as to value," is not a valid stipulation against a loss by fraud or negligence.

ERROR to the Court of Common Pleas of Pickaway county.

The plaintiffs are a partnership of merchants, doing business at Circleville, Ohio. One of the partners, S. Jacobson, resides in the city of New York. On or about the 13th day of November, 1882, he purchased for his firm a first-class seal

---

*The judgment in this case was affirmed by the Supreme Court on authority of Express Co. v. Backman, 28 O. S., 144, December 20, 1890.

38I                          Jacobson & Company v. Adams Express Company.

skin coat of Lyon Brothers, in the city of New York, and directed them to for-
ward it to W. & S. Jacobson & Co., at Circleville, Ohio.   The firm of Lyon
Brothers had an arrangement with Friedlander & Casper, to attend to the shipping
of their goods.  Lyon Brothers put the said seal skin coat in a package and addressed
it to the plaintiffs at Circleville, Ohio.   The shipping clerk of Friedlander & Cas-
per, S. L. Solomon, received the package from Lyon Brothers on the 13th of
November, 1882, addressed to W. & S. Jacobson, Circleville, Ohio, and on the
same day he delivered it to the  employe of  the  Adams  Express Co., who goes
about from store to store collecting parcels, and is called "the collector."  The
shipping clerk delivered the parcel  containing the coat  to  "the collector," who
checked it off upon the receipt hereafter mentioned and wrote his name under the
words "by whom received."   The receipt was  taken  from a book of receipts in
the possession of the shipping clerk, which Lyon  Brothers  had nothing to do
with, and was as follows:

       Not Negotiable.                                              Domestic Bill of Lading.
Received of FRIEDLANDER & CASPER, 374 Broadway, New York, the following articles, sub-
     ject to the contract below:

| Date. | Article. | Value. | C. O. D. | Consignee. | Destination. | By whom received. |
| --- | --- | --- | --- | --- | --- | --- |
| Nov. 13. | Package. | | | W. S. Jacobson. | Circleville, O. | Drummond. |

    Which it is mutually agreed is to be forwarded to our agency nearest or most convenient
to destination only, and there delivered to other parties to complete the transportation.
    It is part of the consideration of this contract, and it is agreed, that the said express com-
pany ARE FORWARDERS ONLY, and are not to be held liable or responsible for any loss or
damage to said property while being conveyed by the CARRIERS to whom the same may
be by said express company entrusted, or arising  from  the  dangers  of  railroads, ocean or
river navigation, steam, fire in stores, depots, or  in  transit, leakage, breakage, or from any
cause whatever, unless, in every case, the same be proved to have occurred from the fraud or
gross negligence of said express company, or  their  servants ; nor, in  any event, shall the
holder hereof demand beyond the sum of  FIFTY  DOLLARS, at which the article forwarded
is hereby valued, unless otherwise herein expressed, or unless specially insured by them, and
so specified in this receipt, which insurance shall constitute the limit of the  liability of the
Adams Express Company.   And if the same is entrusted or delivered to any other express com-
pany, or agent,(which said Adams Express Company are hereby authorized to do), such company
or person so selected shall be regarded exclusively as  the agent of the shipper or owner, and
as such, alone liable, and the Adams Express Company shall not be. in any event, responsible
for the negligence or nonperformance of  any such company or person ; and the shipper and
owner hereby severally agree that all the stipulations and conditions in this receipt contained,
shall extend  to and inure  to  the  benefit of each and  every company or person  to whom the
Adams Express Company may entrust or deliver the above described property for transpor-
tation, and shall define and limit the liability therefor  of such other company or person.   In
no event shall the Adams Express Company be liable for any loss or damage unless the claim
therefor shall be presented to  them, in writing, at  this office, within thirty days after this
date, in a statement to which this receipt shall  be annexed.  All articles of GLASS, or con-
tained in glass, or any of a fragile nature, will be taken at shippers' risk only, and the shipper
agrees that the company shall not be held responsible for any injury, by breakage or other-
wise, nor for damage to  goods  not  properly packed  and  secured  for transportation.   It is
further agreed that said company shall not, in  any event,  be liable for any  loss,  damage
or detention, caused  by the. acts  of  God, civil or  military authority, or by rebellion, piracy,
insurrection, or riot, or the dangers incident to a  time  of  war, or  by any riotous or armed
assemblage.   If any sum of money, besides the charge for transportation, is  to be collected
from the consignee on delivery of the above described  property, and  the  same  is  not paid
within thirty days from the date hereof, the shipper agrees that this company may return said
property to him at the expiration of that time, subject to the conditions of  this receipt, and
that he will pay the charges for transportation both ways, and that the liability of this company
for such property while in its possession for the  purpose of making such collection, shall be
that of warehousemen only.

    The defendants are common carriers, and had a principal office in the city of
New York, and one in Jersey City.   According to their rules, some parcels, when
received, went directly to the principal office in New York City and others to the

office in Jersey City. At the time the package was delivered to the collector nothing was said by anybody as to the value of the goods, and no mark was placed on the package to indicate the value.

The package never reached its destination, and in fact never was heard of after it was delivered to the collector. It could not be traced to the office of the company in New York City or in Jersey City, and there was no proof to show when or where it was lost. There was testimony tending to show that the peculiar manner in which seal skin coats were always put up was known to the collector, and was sufficient to indicate to him that the package contained a valuable article.

The action was brought against the defendants as common carriers, and a copy of the receipt was annexed to the petition. The defendants answered, admitting that they received the parcel before mentioned, in the city of New York, and executed and delivered the receipts, but had no knowledge of the contents or value of the parcel. For a second answer, the defendants alleged that the contract was made in the state of New York and governed by the laws thereof. That by the laws of the state of New York, the shippers, Friedlander & Casper, were, as to the carriers, the owners of the goods, and as such, had a right to contract, and did make the contract contained in the receipt. That by the contract the defendant was in no case to be liable for any loss or damage, unless the claim was presented within thirty days after the date of the receipt, in writing, with the receipt annexed. That it was not so presented. And for a third answer the defendants alleged that the package was received, and the contract made and delivered in the state of New York ; that the receipt was the only contract between the parties; that the defendants under said contract were forwarders only, and were not liable for any loss or damage arising from the dangers of railroads, ocean or river navigation, steam, fire, etc., or any cause whatever, unless the same be proved to have occurred from the fraud or gross negligence of the defendants, nor shall they be liable for more than $50 in any event, at which the article is valued ; that by the laws of New York the said valuation constitutes an agreed valuation of the package, and the loss, no matter how it occurred, is limited to $50 ; that the package at the time of delivery was not stated to be worth more than $50 ; that the defendants had a right to exact an additional charge, by the laws of New York, if the declared value exceeded $50 ; that by the laws of said state, the owner cannot prove any value exceeding $50, if the package is not declared to be more valuable than $50 ; that the loss occurred in the state of New York.

In their fourth defense, the defendant alleged that by the laws of New York it was the duty of the owner at the time of the delivery of the package to declare its value if they desired in case of loss to recover more than $50 ; that mere silence on the part of the shipper, without artifice, on his part, or inquiry by the carrier, constitutes a fraud, and such nondisclosure prevents a recovery beyond $50.

The fifth defense alleged that the defendant had no knowledge of the contents or value of the package ; that the plaintiff represented to the defendants, and it was agreed between them, that the value should be $50 ; that defendants made their charge accordingly, and are now willing to pay $50. That plaintiff knew the rates for transportation were regulated by the value of article shipped, and that greater care was always exercised in proportion to the value ; that the defendants would have charged more if they had known the value of the sack to be $275.

As to the second defense the plaintiffs pleaded a waiver, and as to the others, a denial.

Testimony was offered tending to prove the laws of New York, to be as alleged, also as to the waiver of the notice of loss and claim for damages, and as to other matters.

In the court of common pleas the case was submitted to the court, and judgment rendered for the plaintiff for $50.00. A motion for a new trial was made by the plaintiffs which was overruled, and a bill of exceptions taken.

Page, Abernethy & Folsom, for plaintiffs:

1. The contract was to be performed in Ohio and is governed by the laws of Ohio. Story on Conflict of Laws, section 280; Curtis v. R. R. Co., 74 N. Y.; 116 (30 Am. Rep., 271); Goddard v. Sawyer, 9 Allen, 78; Bright v. Judson, 47 Barb., 29; Balme v. Wambaugh, 38 Barb., 352; McEntee v. Steamboat Co., 45 N. Y., 34; Dyke v. Erie Ry., 45 N. Y., 113; 12 Gray, 244.

2. The stipulation that the defendants are not to be liable beyond $50, is not binding in Ohio. U. S. Express Co. v. Backman, 28 O. S., 144; Hains v. Ins. Co., 28 O. S., 438; Gault v. Adams Express Co., 48 Am. Rep., 746; Railroad v. Sympson, Kansas Sup. Ct., Nov. 9, 1883, 17 Rep., 44; Jones v. Vorhees, 10 Ohio Rep., 145.

3. Non-delivery is gross negligence. Hutchinson on Carriers, section 31; Darling v. Younker, 37 O. S., 488; Bank v. Zent, 39 O. S., 106.

Festus Walters, for defendant, cited numerous authorities not in the possession of the reporter.

BRADBURY, J.

We think the testimony shows that the conditions required by the defendant in regard to the presentation of the claim and receipt in 30 days were waived by them. We do not find that the plaintiff was guilty of any fraud by the mere fact of silence in regard to the value of the seal skin sack, at the time it was delivered to the company. There are decisions of courts of high authority which require the carrier to make inquiry of the shipper as to the value of *the goods*, if he deems the value material. If the owner at the time of the delivery of the goods should, by statements or conduct, deceive the carrier, this would present a different case, and might be a bar to a recovery; but we do not think that mere nondisclosure of the value of the article, in Ohio, constitutes a fraud.

There is no doubt of the truth of the general proposition that the laws of the country have no binding force beyond its territorial limits and their authority is admitted, not "*ex proprio vigore*," but, "*ex comitate*," 2 Kent, 457. Therefore, a court sitting in Ohio, and bound to minister the laws of Ohio, cannot be expected to adopt and enforce the laws of another state, unless compelled to do so by some cogent reason. If there is a conflict between the laws of this state and those of another state, when a contract is sued on here, which was made in the latter state, we should expect to have cause shown why the laws of Ohio should not be followed. In a case decided by the highest court of the state of New York (Curliss v. D., L. & W. R. Co., 74 N. Y., 116), baggage was delivered to the said railroad company at Scranton, Penn., for carriage to the city of New York. The baggage was lost. It was held that the contract was not affected by a statute of Pennsylvania limiting the carrier's liability. The court said: "One of the rules applicable to the subject, is that the *lex loci contractus* is to govern unless it appears upon the face of the contract that it was to be performed in some other place, or made with reference to the laws of some other place, and then the rule of interpretation is governed by the law of the place. Dyke v. Erie R. R. Co., 45 N. Y., 113; s. c., 6 American Rep., 43; Sherrill v. Hopkins, 1 Cow., 103. The place of delivery was a material and important part of the contract, and until such delivery, the same was not completed and fulfilled. Upon a failure to deliver the baggage to the plaintiff, in the city of New York, there was a breach of contract; and as the final place of performance was in that city, it would seem to follow, that within the rule laid down, the contract was to be governed, as least so far as a delivery is concerned, by the laws of New York. This certainly was to be in a different place from where the contract was made, and it is a reasonable inference that it was in the contemplation of the parties at

the time, and that it was entered into with reference to the laws of the place where it was to be delivered."

"So, also, when it appears that the place of performance was different from the place of making the contract, it is to be construed according to the laws of the place where it is to be performed. Sherrill v. Hopkins, *supra*, 108, and authorities there cited; Thompson v. Ketcham, 8 Johns., 189; 5 Am. Dec., 332; 4 Kent's Com., 459. The place of final performance of the contract being in the city of New York, although the transportation was mostly through other states, no reason exists, why a failure to deliver the baggage should not be controlled by the laws which prevail at the place of delivery. It is said that the contract is entire and indivisible, and we are referred to some cases outside of this state, which, it is claimed, sustain the doctrine that the locality where the contract was made, in cases of this character, must control. None of the cases cited are entirely similar to the one at bar, and they do not involve the precise point now considered. But even were it otherwise, they are not, I think, controlling, as no reason exists why a contract to deliver baggage should not be governed by the laws of the place, where the baggage is to be delivered."

We are of the opinion that the law is correctly stated in the foregoing decision, and upon this subject, we have no difficulty in arriving at the conclusion that the place of delivery, in the present case, was the place of performance of the contract, and that the law of Ohio and not the law of New York must control.

In regard to the question whether a common carrier may restrict his liability for fraud or negligence, we think the law of New York is different from the law of Ohio. The policy of our decisions seems to be decidedly against any such restriction.

In Hains v. U. T. & Ins. Co., 28 O. S., 437, Judge Johnson said:

"It is settled in Ohio: 1. That a special exception of the liability of common carrier of goods for any loss which may arise from fire, happening without his neglect or fault, may be lawfully created by special contract between the parties, though it cannot be made by general notice known or unknown to the party engaging the services of the common carrier. Davidson v. Grayham, 2 O. S., 131; Grayham & Co. v. Davis & Co., 4 O. S., 362; Welch v. P., F. W. & C. R. R., 10 O. S., 65; C., H. & D. R. R. Co. v. Pontius, 19 O. S., 221.

2. "That while a common carrier, by a special contract with the owner of the goods entrusted to him, may so far restrict his common law liability as to exonerate himself from losses arising from causes over which he had no control, and to which his own fault or negligence in no way contributed, he cannot relieve himself from responsibility for losses caused by his own negligences or want of care or skill, and the burden of proof is upon the carrier, to show not only a loss within the terms of the exception, but also the proper care and skill were exercised to prevent it." Grayham & Co. v. Davis & Co., 4 O. S., 362.

There was no special contract in the present case, but a general notice contained in the receipt, and we have considerable doubt whether Lyon Brothers could delegate their authority to Friedlander & Casper to make a special contract, if one had been made.

In Gault v. Adams Express Co., 48 Am. Rep., 746, an action was brought against a common carrier for the loss of certain packages, and the receipt given in that case was like the receipt given in the present case. It provided that in case of loss or damage by the fraud or gross negligence of the company the holder should not demand beyond the sum of $50, at which the article forwarded, etc.

The court said, "that inasmuch as this condition undertakes to provide against liability for loss or damage arising from gross negligence, the legal effect of that part of it which speaks of value is not to ascertain and adjust the value of the property, but to limit the damages—the penalty to which the law would have subjected the carrier on account of his fault. By tendering such a condition

the carrier substantially says to the shipper: '* * * I propose to exempt myself from so much of the liability as exceeds $50, by assuming that the actual damages to you occasioned by my fault is only $50, and this I propose to do by assuming that the article is worth only $50.' This is not in good faith a valuation of property. * * * The meaning of a clause which operates only in this way is not to be changed by giving it an arbitrary name."

We think the court erred in giving the plaintiffs judgment for only $50, and it will be reversed.